**HANGER ORTHOPEDIC GROUP, INC., et al., Plaintiffs,**

v.

**Roy McMURRAY, et al., Defendants.**

No. 97–696–CIV–ORL–22C.

United States District Court,
M.D. Florida,
Orlando Division.

Jan. 26, 1998.

## ORDER

CONWAY, District Judge.

On December 12, 1997, Magistrate Judge James G. Glazebrook entered an Order (Dkt.31) in which he determined that certain business communications between defendants Roy McMurray and Crystal McMurray, who are husband and wife, were not protected by Florida's marital privilege. On that basis, Judge Glazebrook granted Plaintiff's Motion to Compel Answers and for Sanctions (Dkt.20) insofar as it sought an order compelling defendant Roy McMurray to answer deposition questions concerning his conversations with his wife on that subject.[1]

The McMurrays have filed Objections (Dkt.33) to Judge Glazebrook's Order. Plaintiffs have responded to those objections. The Court determines that the McMurrays' objections are without merit.

██ Only one objection raised by the McMurrays warrants discussion.

In his Order, Judge Glazebrook stated:

As a matter of law, no reasonable person could have believed that business-related communications between Roy and Crystal

---

1. Judge Glazebrook denied the motion insofar as it sought sanctions. No party has sought review of that ruling.

McMurray were made in confidence. Crystal McMurray assumed the role of incorporator, initial director, present director, majority shareholder, and President of a Florida corporation. Crystal McMurray therefore assumed the duty under Florida law to divulge an enormous amount of information about Brevard Prosthetics, Inc. under various circumstances.

Dkt. 31 at 12 (footnote omitted). Judge Glazebrook then discussed the various circumstances under which a person in Crystal McMurray's position must disclose information about the corporation she serves. In connection with this discussion, Judge Glazebrook cited a number of Florida statutes relating to corporations. The McMurrays complain that many of the statutes cited by Judge Glazebrook do not "require disclosures that would in any way implicate the types of communications at issue in the motion to compel." Dkt. 33 at 4.

The McMurrays miss the point. Judge Glazebrook cited the statutes to illustrate the many aspects of a corporation's business that a person in Crystal McMurray's position cannot claim are confidential. He did so to drive home the point that no reasonable person could believe that the McMurray's discussions relating to the formation and business of the corporation were made in confidence. In any event, even if Judge Glazebrook's reliance on these statutory provisions was misplaced, that fact would not detract from the soundness of his ultimate conclusion— that a reasonable person could not believe that the subject communications were confidential.

Based on the foregoing, it is ORDERED as follows:

1. The Court determines that Judge Glazebrook's December 12, 1997 Order (Dkt.31) is neither clearly erroneous nor contrary to law.

2. Roy and Crystal McMurrays' Objections (Dkt.33), filed December 29, 1997, are overruled.

## ORDER

This cause came on for consideration at oral argument on October 16, 1997 on the following motion:

**MOTION: PLAINTIFFS' MOTION TO COMPEL ANSWERS AND FOR SANCTIONS** [Docket No. 20]

**FILED:** September 18, 1997

**DISPOSITION: GRANTED in part; DENIED in part.**

## I. INTRODUCTION

Plaintiffs Hanger Orthopedic Group, Inc. and J.E. Hanger, Inc. [hereinafter, "Hanger"] seek an order compelling defendant Roy McMurray to answer various deposition questions concerning business conversations he had with his wife, defendant Crystal McMurray, regarding the formation of Brevard Prosthetics, Inc. Roy McMurray objected to answering the deposition questions based on the husband-wife communications privilege. The deadline for completion of discovery is March 30, 1998. Docket No. 17. The deadline to serve experts' reports is January 30, 1998. *Id.* Trial is set for the term commencing September 1, 1998. *Id.* For the reasons stated below, Hanger's motion to compel is GRANTED in part as to compelling answers, and DENIED in part regarding sanctions.

## II. THE FACTS

Defendant Roy McMurray worked for Hanger as a certified prosthetist in the Brevard County area. *See* Docket No. 29, Exhibit 1. Defendant William Patterson also worked for Hanger as a prosthetist. Prior to joining Hanger, both Roy McMurray and Patterson signed non-compete and non-solicitation agreements with Hanger. *See* Docket No. 29. Roy McMurray's agreement provides, in part:

(a) *Non–Compete.* For so long as Employee is employed by the Company, and for a period of two (2) years thereafter, Employee shall not, within a fifty-mile radius of the Company's office at [1121 Geiger St. Rockledge, FL; 2894 Palm Bay Rd., N.E.,

Palm Bay, FL] compete against the Company by engaging as principal, agent, employee, trustee, or through the agency of any corporation, partnership, association, or individual in the manufacture, sale, or servicing of prosthetic or orthotic devices. Docket No. 29, Exhibit 2 at 3. The agreement contains similar provisions restricting the solicitation of employees, customers, and referral sources for customers. *See* Docket No. 29, Exhibit 2 at 3–4. Patterson's agreement also restricted his activity, though not in the Brevard County area.

Despite the non-compete clause covering Roy McMurray, Crystal McMurray—Roy McMurray's wife—and William Patterson formed Brevard Prosthetics, Inc. on January 28, 1997. *See* Docket No. 23. At that time, both Roy McMurray and Patterson still worked for Hanger. *See* Docket No. 20. Although Crystal McMurray has no background or experience in prosthetics, she is the incorporator, the majority shareholder, a director, and the President of Brevard Prosthetics, Inc. *See* Docket No. 29, Exhibits 1, 3—4, 6. Crystal McMurray financed Brevard Prosthetics, Inc., in part, through a joint checking account with Roy McMurray. *See* Docket No. 29, Exhibit 1.

Hanger commenced this diversity action to obtain injunctive relief to enforce its non-compete agreement against Roy McMurray and William Patterson [together, the "former employees"], and to recover damages from the former employees, from defendant Crystal McMurray, and from defendant Brevard Prosthetics, Inc. (together, the "defendants"). Three of the original four counts in the complaint remain.[1] Hanger alleges that 1.) the former employees breached their restrictive covenants in their employment agreements with Hanger; 2.) each defendant tortiously interfered with Hanger's relationship with the former employees; and 3.) all defendants conspired to injure Hanger's business with its customers and referral sources. Specifically, Hanger alleges that Roy McMurray formed Brevard Prosthetics, Inc. with the help of Crystal McMurray and William Patterson. Hanger's complaint raises one cen-

tral issue: the extent to which Roy McMurray has caused the formation and operation of Brevard Prosthetics, Inc. through his wife.

Roy McMurray claims that Florida's husband-wife privilege allows him to decline to answer deposition questions concerning conversations between himself and his wife concerning the formation of Brevard Prosthetics, Inc. *See* Docket Nos. 23, 29. Roy McMurray contends that the conversations are privileged and non-disclosable no matter how probative they may be of his involvement in the formation or operation of Brevard Prosthetics, Inc. Hanger concedes that marital communications are presumptively confidential. *See* Docket No. 20. Nevertheless, Hanger argues that marital communications regarding business transactions—including those concerning the formation of Brevard Prosthetics—were not intended to be confidential. *See* Docket No. 20.

Roy McMurray seeks the protection of the husband-wife privilege to avoid giving answers to each of the following questions, among others:

1.) What conversations did you have with your wife with respect to forming Brevard Prosthetics?

2.) Did your wife inform you that she was obtaining a yellow-page advertisement for Brevard Prosthetics?

3.) Did you discuss with your wife your intention or plans to offer to buy Coastal Prosthetics?

4.) What agreement or understanding do you have with your wife with respect to your future involvement with Brevard Prosthetics?

5.) Now, it states in here, and I'm going to quote from [the advertisement], that you "plan to join the staff of Brevard Prosthetics as soon as you satisfy your non-compete agreement with your former employer." *** Did you make that comment to your wife?

6.) What specifically did your wife talk to you about with respect to any issues that

---

1. On September 26, 1997, the Honorable Anne C. Conway dismissed Hanger's claim that the

former employees breached a duty of loyalty owed to Hanger. *See* Docket No. 22.

are addressed in the shareholder's agreement?

*See* Docket No. 29, Exhibit 1.

## III. THE LAW

Pursuant to the Federal Rules of Evidence, Florida law determines whether the husband-wife privilege protects Roy McMurray from disclosing discussions with Crystal McMurray regarding the formation of Brevard Prosthetics, Inc. because this Court's jurisdiction is based on diversity of citizenship. *See* Fed.R.Evid. 501; Docket No. 1. The Florida legislature has established the general rule that *no person has a privilege to prevent another from being a witness, from disclosing any matter, or from producing any object or writing.* *See* Fla.Stat. § 90.501 (emphasis supplied).

Florida's husband-wife privilege is a statutory exception to the general rule. Section 90.504 of the Florida Statutes provides, in relevant part, that:

(1) A spouse has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, **communications which were intended to be made in confidence** between the spouses while they were husband and wife.

(2) The privilege may be claimed by either spouse or by the guardian or conservator of a spouse. The authority of a spouse, or guardian or conservator of a spouse, to claim the privilege is presumed in the absence of contrary evidence.

(3) There is no privilege under this section:

(a) In a proceeding brought by or on behalf of one spouse against the other spouse.

(b) In a criminal proceeding in which one spouse is charged with a crime committed at any time against the person or property of the other spouse, or the person or property of a child of either.

(c) In a criminal proceeding in which the communication is offered in evidence by a defendant-spouse who is one of the spouses between whom the communication was made.

Fla.Stat. § 90.504 (emphasis supplied).

The Florida courts recognize a strong public policy supporting the marital privilege. *See Smith v. State of Florida,* 344 So.2d 915, 919 (Fla. 1st DCA 1977); *Jackson v. State of Florida,* 603 So.2d 670, 671 (Fla. 4th DCA 1992). Florida courts have described that policy as follows:

Society has a deeply-rooted interest in the preservation of the peace of families, and in the maintenance of the sacred institution of marriage; and its strongest safeguard is to preserve with jealous care any violation of those hallowed confidences inherent in, and inseparable from, the marital status. Therefore the law places the band of its prohibition upon any breach of the confidence between husband and wife, by declaring all confidential communications between them to be incompetent matter for either of them to expose of witnesses.

\*   \*   \*   \*   \*   \*

The matter that the law prohibits either the husband or wife from testifying to as witnesses includes any information obtained by either during the marriage, and by reason of its existence. It should not be confined to mere statements by one to the other, but embraces all knowledge upon the part of either obtained by reason of the marriage relation, and which, but for the confidence growing out of it, would not have been known.

*Smith,* 344 So.2d at 918–19, quoting *Mercer v. State,* 40 Fla. 216, 24 So. 154, 157 (Fla. 1898); *see also Cox v. State of Florida,* 192 So.2d 11 (Fla. 3rd DCA 1966).

The courts will not engage in an after-the-fact analysis of whether a statement is "incidental to" or "because of" the marital relationship. *See Smith,* 344 So.2d at 919; *Jackson,* 603 So.2d at 671. The court presumes a marital context "because a married couple, and each of them, should be secure in the knowledge that their private communications are exactly that—private." *See Jackson,* 603 So.2d at 671; *see also*

*Smith,* 344 So.2d at 919. As stated in *Smith* :

> The great danger inherent in an inquiry concerning causation of an otherwise confidential conversation between husband and wife is the potential chilling effect upon the policy underlying the marital privilege. A married couple should be secure in the knowledge that their private communications will be protected and will not be susceptible to exposure by an after-the-fact determination that the communications did not arise as a direct result of the marital relationship.

*Smith,* 344 So.2d at 918–19 (improper to admit conversations between the defendant and his wife after a shooting on the ground that the statements were made incidental to, rather than because of, the marital relationship given that the communications were intended to be confidential).

The statute specifically delineates exceptions to the marital privilege, so the courts are "loathe to add additional exceptions." *See* 90.504(3)(a)–(c); *Jackson,* 603 So.2d at 671; *see also Smith,* 344 So.2d at 918–20; *Johnson v. State,* 451 So.2d 1024 (Fla. 1st DCA 1984). Florida courts may not adopt evidentiary privileges not set forth by statute. *See Marshall v. Anderson,* 459 So.2d 384, 386–87 (Fla. 3rd DCA 1984) (court declined to consider the wisdom of recognizing an academic testimonial privilege, stating that the courts are judicially powerless to do so under the limitations of Fla.Stat. 90.501); *see also* Fla.Stat. 90.501.[2] Furthermore, the courts will not expand the present statutory exceptions. *See, e.g., Smith,* 344 So.2d at 918–19 ("We refuse to engraft . . . an exception upon the marital privilege, again because of the harm it would inflict upon the strong policy underlying the privilege"); *Johnson,* 451 So.2d at 1024–25; *Jackson,* 603 So.2d at 671 (murder conviction reversed because the trial court allowed defendant's wife to testify that her husband had called her from jail with threats in an effort to get her to change her trial testimony); *Bell v. State of Florida,* 650 So.2d 1032, 1034–35 (Fla. 5th DCA 1995)

(the statutory exception in Fla. Stat. 90.504(3)(b) allowing a spouse whose property was damaged to testify against the victimizing spouse did not extend to a spouse who was a co-conspirator in arson).

Florida does not recognize an exception to the husband-wife privilege for communications made in furtherance of a crime. *See Smith,* 344 So.2d at 918–19; *Johnson,* 451 So.2d at 1024–25 (though such an exception exists under federal law, Florida does not except from the husband-wife privilege confidential communications between husband and wife made in furtherance of a crime); *State of Florida v. Arata,* 438 So.2d 1032 (Fla. 1st DCA 1983) (telephone conversations between spouses concerning joint criminal activity and intercepted by court-authorized order were properly suppressed). In *Smith,* the trial court—over the husband's objection—allowed the wife to testify that her husband admitted killing a man, and also discussed removing and burying the man's body. *Id.* Finding no exception to for communications in furtherance of a crime and citing the strong public policy supporting the privilege, the court of appeals reversed. *Id.*

Though otherwise applicable, the husband-wife privilege may be waived. *See* Fla.Stat. 90.507. Florida Statute 90.507 provides, in relevant part:

> A person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if he . . . voluntarily discloses or makes the communication when he does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication. This section is not applicable when the disclosure is itself a privileged communication.

Waiver by one spouse does not bar the other spouse from asserting the husband-wife privilege, however, because the privilege is held by both parties to the marriage. *See* Fla. Stat. 90.504; *see also Brown v. May,* 76 So.2d 652 (Fla.1954).

Nevertheless, the Florida legislature has expressly provided that only communications

---

**2.** The Law Revision Council Note to § 90.501 provides that "[t]his section abolishes all common-law privileges existing in Florida and makes the creation of privileges dependent on legislative action or pursuant to the Supreme Court's rule-making power."

*intended to be confidential* are privileged. *See* Fla.Stat. § 90.504; *Proffitt v. State of Florida,* 315 So.2d 461 (Fla.1975); *Gross v. Security Trust Co.,* 453 So.2d 944 (Fla. 4th DCA 1984). Communications between spouses are presumed to be confidential unless there is evidence to the contrary. *See* Charles W. Ehrhardt, Florida Evidence, § 504.3 (1997 Ed.); *see also* McCormick on Evidence, § 80 (4th ed.1992). A variety of factors may rebut the presumption that a spouse intends a communication to be confidential, including the nature of the message and the circumstances under which it was delivered. *See* McCormick on Evidence, § 80 (4th ed.1992).

The fact that the communication relates to business may demonstrate the intent that a communication was not intended to be confidential. Though no Florida case addresses the issue, Ehrhardt states: "Generally, private communications which have been found not to be confidential relate to business matters by and between the spouses." Charles W. Ehrhardt, Florida Evidence, § 504.3 (1997 ed.). McCormick states:

> Communications in private between husband and wife are assumed to be confidential, though of course this assumption will be strengthened if confidentiality is expressly affirmed, or if the subject is such that the communicating spouse would probably desire that the matter be kept secret, either because its disclosure would be embarrassing of for some other reason. *However, a variety of factors, including the nature of the message or the circumstances under which it was delivered, may serve to rebut a claim that confidentiality was intended.*
>
> \*  \*  \*  \*  \*  \*
>
> *The fact that the communication relates to business transactions may show that it was not intended as confidential. Exam-*

*ples are statements about business agreements between the spouses, or about business matters transacted by one spouse as agent for the other, or about property or conveyances. Usually such statements relate to facts which are intended later to become publicly known. To cloak them with privilege when the transactions come into litigation would be productive of special inconvenience and injustice.*

McCormick on Evidence, § 80 (4th ed.1992) (emphasis supplied). An example of business matters transacted by one spouse as agent for the other is where a spouse is the other's agent in making joint income tax returns and in applying for loans. *Fowler v. United States,* 352 F.2d 100, 113 (8th Cir.1965).

■■■ In federal criminal proceedings in this circuit, communications between a husband and wife about crimes in which they were jointly participating are not confidential marital communications. *United States v. Mendoza,* 574 F.2d 1373, 1380 (5th Cir.1978).[3] It is also well established that there is no protection for spousal communications which, by their nature, are not intended to be confidential because a third party is present. *Picciurro v. United States,* 250 F.2d 585 (8th Cir.1958).

■■■ Similarly in a civil case, spousal communications are not intended to be confidential if they relate to business matters— matters which are inherently subject to conveyance to third parties. In *G–Fours, Inc. v. Miele,* 496 F.2d 809, 813 (2d Cir.1974), a wife refused to answer interrogatories posed by her husband's judgment creditor regarding assets, bank accounts, and fraudulent transfers of property to the wife in order to thwart execution. 496 F.2d at 810–11. The Second Circuit held that the wife was not entitled to assert New York's husband-wife privilege[4] because the "questions posed to her dealt with business mat-

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit prior to the close of business day on September 30, 1981.

**4.** Under the NYCPLR § 4502(b), "a husband or wife shall not be required, or, without consent of

the other if living, allowed, to disclose a confidential communication made by one to the other during marriage." The language of the New York law appears to be stricter than the Florida law because it does not contain Florida's express statutory limitation to communications that are *"intended to be made in confidence."*

ters that either were not confidential or, if deliberate efforts were made to conceal them to prevent execution of judgment, were not privileged even if the parties intended them to be confidential." 496 F.2d at 813.

## IV. APPLICATION AND ANALYSIS

First, it is helpful to review issues that Hanger does *not* raise in its motion to compel. Hanger's motion does not ask this Court to compel answers on the ground that a third party was present during the McMurrays' conversations such that Roy McMurray had no reasonable expectation of privacy, or that the McMurrays in fact discussed the same substance with third parties in separate conversations. The motion does not ask the Court to decide whether Roy McMurray waived the husband-wife privilege pursuant to Fla.Stat. § 90.507. Finally, Hanger does not ask the Court to decide whether Roy McMurray must testify to his observations of his wife's actions, as opposed to their communications.

Hanger's motion raises one issue: may the Court compel the disclosure of business-related communications between Roy McMurray and Crystal McMurray—the incorporator, initial director, present director, controlling shareholder, and President of Brevard Prosthetics, Inc.—because, as a matter of law, no reasonable person could have believed that those business-related communications were made in confidence. The Court finds in the affirmative, and grants Hanger's motion to compel.

For the purposes of this analysis, it matters little whether Hanger is seeking to compel testimony from Roy McMurray or from Crystal McMurray. Either way, the testimony relates to the same conversations. Although Roy McMurray raises the issue today regarding his deposition, Crystal McMurray will surely raise the same issue tomorrow. Also, for the purpose of this analysis, it matters little whether a notice of deposition for Crystal McMurray is captioned 1.) as a deposition of defendant Crystal McMurray indi-

vidually; 2.) as a deposition of Crystal McMurray in her capacity as director and President of defendant Brevard Prosthetics, Inc., or 3.) as a deposition of Brevard Prosthetics, Inc.

As a matter of law, no reasonable person could have believed that business-related communications between Roy and Crystal McMurray were made in confidence. Crystal McMurray assumed the role of incorporator, initial director, present director, majority shareholder, and President of a Florida corporation.[5] Crystal McMurray therefore assumed the duty under Florida law to divulge an enormous amount of information about Brevard Prosthetics, Inc. under various circumstances.

For example, she must disclose information about the corporation needed by the registered agent to comply with Fla.Stat. § 607.0505, including the names of all persons holding positions equivalent to officer or director, and all equitable owners. She must disclose all information needed to truthfully file and correct the incorporation documents. Fla.Stat. §§ 607.0120, 607.0124, 607.0129. She must disclose all information necessary to exercise the corporation's general powers. Fla.Stat. §§ 607.0302, 607.0303. She must disclose all information relating to shares held by nominees. Fla.Stat. § 607.0723. She must disclose all information necessary to exercise her duties in good faith and with ordinary prudence. Fla.Stat. §§ 607.0830, 607.0832, 607.0833, 607.0834. She must disclose all information necessary to permit the performance of her duties and others' duties as set forth in the by-laws and as prescribed by the board of directors. Fla.Stat. § 607.0841.

By way of further example, Florida law requires Crystal McMurray to disclose all information about affiliated transactions, affiliates, associates, and beneficial owners. Fla.Stat. § 607.0901. She must disclose for inspection all information necessary to maintain truthful corporate records regarding many matters, including written communica-

---

**5.** The parties provided this information to the Court at the hearing on October 16, 1997. Counsel for Crystal McMurray could not recall whether Crystal McMurray also held the position of Treasurer.

tions with shareholders. Fla.Stat. §§ 607.1601, 607.1602, 607.1603, 607.1604. She must disclose all information required by the Florida Department of State. Fla.Stat. § 607.1622(1)(i).

As an employee and director of Brevard Prosthetics, Inc., Crystal McMurray was an agent of the corporation. An agent holds a power to alter the legal relationship between the principal and third persons. Restatement (Second) of Agency § 12. An agent is a fiduciary with respect to matters within the scope of her agency. Restatement (Second) of Agency § 13. For this reason, agents have a legal duty to divulge a large variety of information to others. All corporate powers are exercised by or under the authority of the board of directors, which also manages all corporate business and affairs. Fla.Stat. § 607.0801. The directors must be able to rely on officers, employees, counsel, and accountants in exercising their duties. Fla. Stat. § 607.0830. Officers and employees must disclose a substantial amount of information to the directors and accountants. Directors must disclose a substantial amount of information to other directors.

Hanger also seeks to prove that Crystal McMurray acted as Roy McMurray's agent or alter ego in forming and running Brevard Prosthetics, Inc. The undisclosed principal is not a stranger to the law of agency. *See* Restatement (Second) of Agency § 4 and related sections. A wife can be a husband's agent. *See* Restatement (Second) of Agency § 22; *accord, Fowler v. United States*, 352 F.2d 100, 113 (8th Cir.1965). Crystal McMurray may be an agent of both Brevard Prosthetics, Inc. and of Roy McMurray. Indeed, Roy McMurray may be the beneficial controlling shareholder and alter ego of Brevard Prosthetics, Inc.

If Roy McMurray is Crystal McMurray's secret business partner—or Brevard Prosthetics, Inc.'s secret business partner—then Florida partnership law also requires each partner to divulge a large amount of information under a variety of circumstances. A partnership is an association of two or more persons to carry on a business for profit as co-owners. Fla.Stat. § 620.585. Every part-

ner is an agent of the partnership for the purposes of its business. Fla.Stat. §§ 620.60, 620.8301. An admission or representation by a partner concerning partnership affairs within the scope of one's authority binds the partnership and its partners. Fla.Stat. § 620.61. A partner has a duty to render true and full information of all things affecting the partnership to any other partner. Fla.Stat. §§ 620.655, 620.8403(3).

There are few pieces of information more important to the directors, shareholders, investors, customers, auditors, and regulators of Brevard Prosthetics, Inc. than this: who controls the company? In light of the vast array of far less important business information that Crystal McMurray is obliged to disclose to others as incorporator, director, controlling shareholder, and President of Brevard Prosthetics, Inc., no reasonable person [6] could have believed that business-related communications between Roy and Crystal McMurray about the formation and management of Brevard Prosthetics, Inc. were made in confidence. Neither Crystal nor Roy McMurray may hide behind the husband-wife privilege in preventing the disclosure of conversations tending to prove who controls Brevard Prosthetics, Inc. Roy McMurray, Crystal McMurray, and Brevard Prosthetics, Inc. must answer all questions reasonably calculated to lead to the discovery of relevant evidence about Roy McMurray's role in the formation and operation of Brevard Prosthetics, Inc.

## V. CONCLUSION

Hanger's motion to compel at Docket No. 20 is GRANTED. Hanger also seeks attorney's fees and costs incurred in preparing its motion to compel and deposing Roy McMurray for a second time pursuant to Fed. R.Civ.P. Rule 37(a)(4). The motion for sanctions at Docket No. 20 is DENIED because this case is one of first impression.

GLAZEBROOK, United States Magistrate Judge.

December 12, 1997.

---

6. The test should be objective, not subjective.