## Kine *v.* Forman, Appellant.

Argued March 17, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*David Freeman,* for appellant.

*Albert S. Shaw, Jr.,* for appellee.

OPINION BY WATKINS, J., April 15, 1965:

This is an appeal by Max Forman, the defendant-appellant, from an order of the Court of Common Pleas No. 1 of Philadelphia County imposing sanctions for refusing to answer questions posed to him in a deposition in aid of execution on a judgment pursuant to Rule 3117 of the Pa. Rules of Civil Procedure. The sanctions imposed were a fine of $200 and reimbursement to the appellees for costs and counsel fees in the amount of $100.

The action was brought to enforce a judgment entered on December 17, 1937, in favor of the plaintiffs Dr. Israel Kine and Oscar Rosenbaum and against

Louis Forman and the appellant. The judgment had been revived periodically since 1937 and continuous attempts have been made to enforce it. The Supreme Court affirmed an order of the Court of Common Pleas of Philadelphia County dismissing the appellant's rule to strike the judgment in *Kine v. Forman*, 404 Pa. 301, 172 A. 2d 164 (1961), and the Supreme Court quashed an appeal of the appellant at *Kine v. Forman*, 412 Pa. 163, 194 A. 2d 175 (1963), as premature.

The appellant admitted that he had served as secretary-treasurer of the Crown Wallpaper Company continuously from 1948, the year of the company's founding, to the present. He also admitted that his wife held title to an automobile which actually was owned by Crown Wallpaper Company. He claims he owns no propery of any kind except three old suits and an insurance policy. As the court below said: "In view of the above, the plaintiffs had reason to believe the defendant had systematically arranged his affairs so as to place his assets in the name of his wife through their possible joint connection with Crown Wallpaper Company. Accordingly the plaintiffs propounded questions which could lead to a 'turnover' order directing the wife to produce concealed property under Rule 3118(a) of the Rules of Civil Procedure."

During the course of the depositions the appellant was asked and refused to answer the following questions: "(a) Were you employed immediately prior to the formation of Crown Wallpaper Company? (b) Did your wife become President of Crown Wallpaper Company at the time of its formation? (c) Did your wife perform any services for Crown Wallpaper Company in 1948? (d) Who paid for the automobile held by your wife but owned by Crown Wallpaper Company? (e) Did Crown Wallpaper Company advance the funds to pay for the automobile? (f) Did your wife pay for the automobile with her money? (g) Who are the

present stockholders of Crown Wallpaper Company and who were the stockholders at the time of its formation? (h) Is your wife a stockholder of Crown Wallpaper Company? (i) Is your wife employed at the present time? (j) Who supports your wife? (k) Does your wife own any real estate?" He also refused to produce copies of his income tax returns which were covered by the subpoenas served prior to the depositions.

The depositions were taken under Rule 3117 which reads as follows: "(a) Plaintiff at any time after judgment, before or after the issuance of a writ of execution, may, for the purpose of discovery of assets of the defendant, take the testimony of any person, including a defendant or a garnishee, upon oral examination or written interrogatories as provided by the rules relating to Depositions and Discovery. The prothonotary of the county in which judgment has been entered or of the county within this Commonwealth where the deposition is to be taken, shall issue a subpoena to testify."

The scope of depositions under the rule is limited by Rules 4007 and 4011 of the Rules of Civil Procedure which reads as follows: "Rule 4007(a) Any party may take the testimony of any person, including a party, for the purpose of discovery by deposition upon oral examination or written interrogatories of the identity and whereabouts of witnesses. Subject to the limitations provided by Rule 4011, the deponent may also be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings or the preparation or trial of the case." "Rule 4011 No discovery or inspection shall be permitted which (a) is sought in bad faith; (b) causes unreasonable annoyance, embarrassment, expense or oppression to the deponent or any person or party; (c) relates to matter which is privileged or would re-

quire the disclosure of any secret process, development or research; (d) would disclose the existence or location of reports, memoranda, statements, information or other things made or secured by any person or party in anticipation of litigation or in preparation for trial or would obtain any such thing from a party or his insurer, or the attorney or agent of either of them, other than information as to the identity or whereabouts of witnesses; (e) would require the making of an unreasonable investigation by the deponent or any party or witness."

The appellant made no serious effort to show that the information sought in these discovery proceedings would cause unreasonable annoyance, embarrassment, expense or oppression. The question to be decided here is whether or not the questions asked relate to privileged matters within Rules 4007 and 4011. The privileges he contends are (1) that any information he might give with respect to Crown Wallpaper Company is privileged because he is an officer of the company and as such he owes fiduciary duty to the stockholders; and (2) that the husband and wife privilege is involved in any question which would disclose the existence of assets now in the hands of the wife.

The objection to answering questions relating to his wife are based on the theory that such questions would violate the Act of May 23, 1887, P. L. 158, §5, cl. (c), 28 PS §317, which provides that one spouse is not competent to testify against the other. We have held that this Act is subject to limitations and the modern view is that these limitations may be expanded. "This privilege has no longer adequate reason for retention. In an age which has so far rationalized, depolarized and dechivalrized the marital relation and the spirit of femininity as to be willing to enact complete legal and political equality and independence of man and woman, this marital privilege is the merest anachronism in le-

gal theory and an indefensible obstruction to truth in practice . . .". Wigmore on Evidence, Vol. VIII, §2228, page 221.

The leading case on the subject in Pennsylvania is *Kerr v. Clements,* 148 Pa. Superior Ct. 378, 25 A. 2d 737 (1942), where we said at page 384: "The prohibition against the competency of husband and wife to testify against each other operates only within proper bounds. It was not intended in the act to supply the means of protecting another in a fraudulent transaction nor to render husband and wife secure in the enjoyment of the fruits of fraud." See also: *Com. v. Wilkes,* 414 Pa. 246, 199 A. 2d 411 (1964). "Not only is the policy of the privilege against a wife's testimony not seriously violated . . . but otherwise the husband could always shield himself from liability by choosing to make his wife his agent to transact business." Wigmore on Evidence, Vol. VIII, §2232, pages 227, 228. The public policy which protects as confidential the private communications or acts by the husband and wife does not necessarily extend to those communications or acts which are in furtherance of a fraud, where the proceedings are based upon a civil action. *Fed. Dep. Ins. Corp. v. Alter,* 106 F. Supp. 316, 318 (W.D. Pa. 1952).

The contention that his failure to answer certain of the questions was justified by virtue of a privilege, as an officer of the corporation, not to disclose the name of a stockholder, is without merit. He cites no authority for this position. It is hard to conceive, in this case, in what manner the answer to such a question would cause unreasonable annoyance, embarrassment, expense or oppression or how the corporation could possibly be prejudiced by such a disclosure.

As to the failure to produce his income tax returns, we believe that Judge McKay of Mercer County came to the right conclusion in *Brei v. Sharon Steel Corp.,*

8 Pa. D. & C. 2d 483. He carefully reviewed the law and found that there were no Pennsylvania Appellate Court cases on the point and that there is a split of authority in the federal decisions. He concludes that the better reasoned cases were those which held that copies of the federal income tax returns are not privileged esspecially where the taxpayer has put his earning capacity in issue.

Judge McKAY pointed out at page 484:

"Inasmuch as any privilege to be attached to income tax returns must be found in the statute providing for them, it is necessary to examine the pertinent Act of Congress to determine whether such records are privileged. The Act of October 8, 1940, 54 Stat. at L.1008, as amended, 26 U.S.C. §55, provides, in part: 'Returns . . . shall constitute public records; but, except as hereinafter provided in this section, they shall be open to inspection only upon order of the President and under rules . . . prescribed by the Secretary and approved by the President.'

"The regulations promulgated by the President provide: 'The return of an individual shall be open to inspection (a) by the person who made the return, or by his duly constituted attorneys in fact.'

"Construing the above act and regulation, the Federal courts have divided on the question whether copies of income tax returns are privileged in actions between private individuals."

In the case of *Connecticut Importing Company v. Continental Distilling Corporation*, 1 F.R.D. 190 (1940), it was held: "The statutory privilege is limited to the prohibition of disclosures by officers of the government; and it is further limited by specified exceptions whereby under specified circumstances even government officials may disclose the communications. And the courts, when once satisfied that a given case falls outside the statutory privilege, refuse to recog-

nize any privilege whatever and accord to the communication such admissibility as it would under the controlling law of evidence (citing cases) . . .". See also *Reeves v. Pa. R. Co.,* 80 F. Supp. 107 (1948) (D.C. Del.). "It has been held that federal income tax returns are not privileged, and that the courts have the power to compel the production of copies thereof, where the information contained in the returns is relevant to the issues involved." 12 P.L.E. §12, page 183.

We agree with the court below that the Act does make the income tax returns "public records" and that "the prohibition against their unlimited examination and inspection" is for the protection of the treasury officials, "and in no way extends to the person making the returns when requested to do so by a court of competent jurisdiction."

Order affirmed.