**G–FOURS, INC., Plaintiff-Appellee,**

v.

**Charles A. MIELE and Intersurance Systems Corporation, Defendants-Appellants.**

**No. 589, Docket 73–2386.**

United States Court of Appeals, Second Circuit.

Argued Feb. 28, 1974.

Decided April 24, 1974.

Harvey G. Wolfe, New York City (Wolfe & Wolfe, New York City, on the brief), for defendants-appellants.

Stephen Hochhauser, New York City (Steinhaus & Hochhauser, New York City, on the brief), for plaintiff-appellee.

Before KAUFMAN, Chief Judge, FEINBERG and MULLIGAN, Circuit Judges.

FEINBERG, Circuit Judge:

Defendant Charles A. Miele and his wife Ethel appeal from an order of the United States District Court for the Southern District of New York, Walter R. Mansfield, J.,[1] which held Ethel Miele in contempt for refusing to answer certain written interrogatories regarding her husband's assets. Mrs. Miele had asserted a marital privilege not to reply to various questions, but the judge rejected this claim. Because we believe that the marital privilege was not available, we affirm the contempt order although on a partially different theory from that relied on by the district court.

I

The underlying diversity action was tried before Judge Mansfield without a jury in April 1972. The complaint alleged, and the judge found, that Charles Miele had defrauded plaintiff G-Fours, Inc. in 1968 in connection with the financing of a Colorado construction loan. Accordingly, in June 1972, plaintiff was awarded a judgment of $15,217.54, representing damages of $11,400 plus interest, costs and disbursements.

Since then, plaintiff has fruitlessly been trying to collect this amount from Charles Miele. After the marshal's execution obtained only $783.40 from a bank account, G-Fours began supplementary proceedings to discover hidden or fraudulently transferred assets. Plaintiff served information subpoenas and interrogatories[2] upon judgment debtor Charles Miele, his wife Ethel, and his wholly-owned corporation, Infinco, Inc., and all three failed either to respond or to move to obtain a protective order. On plaintiff's unopposed motion, the court then directed Charles Miele, his wife and Infinco to answer the questions put to them and to pay $250 counsel fees. Plaintiff duly served the court's order upon all, and for the first time Charles Miele claimed his privilege against self-incrimination with respect to several questions because criminal proceedings were pending against him.[3] Infinco made similar responses. Mrs. Miele also refused to answer some questions, which sought information regarding her husband's bank accounts and property and recent transfers to her by her husband of property or money, "on the grounds of the privilege between husband and wife."[4]

---

1. Judge Mansfield, a member of this court, was sitting by designation.

2. Pursuant to Fed.R.Civ.P. 69(a), and N.Y. C.P.L.R. §§ 5223, 5224, McKinney's Consol. Laws, c. 8.

3. Mr. Miele stated that he was a defendant in criminal proceedings involving similar subject matter in the United States District Courts for the Southern District of Florida and the Western District of Missouri; the Florida proceeding had resulted in a conviction which was being appealed to the Fifth Circuit.

4. Mrs. Miele refused to answer the following questions:
   Has your husband transferred to you anything of value, either property or money, in the past three years?
   If so, list each transfer and state the consideration given.

G-Fours moved to hold all three in contempt. The judge, in an unpublished memorandum, sustained Mr. Miele's assertion of his self-incrimination privilege, but rejected the corporation's similar claim and held it in contempt. The judge also ruled that Mrs. Miele was in contempt because the "spousal immunity" granted by New York State law did not protect her. Infinco and Mrs. Miele were jointly directed to pay plaintiff its costs in obtaining the contempt order and attorneys' fees in the sum of $1,500. Thereafter, both Mieles asked the judge to reconsider his ruling. In the consequent flurry of papers, plaintiff brought to the attention of the court what may have been a fraudulent conveyance by Charles Miele to his wife of an expensive automobile and hearsay allegations that Mr. Miele in a bail application, see note 3 supra, had claimed to own two automobiles, a house and various bank accounts. Mr. Miele denied these charges. However, the judge adhered to his decision holding Mrs. Miele in contempt. That ruling is the subject of this appeal.[5]

## II

Mrs. Miele bases her claim of marital privilege upon N.Y.C.P.L.R. § 4502(b), which provides:

A husband or wife shall not be required, or, without consent of the other if living, allowed, to disclose a confidential communication made by one to the other during marriage.[6]

In holding the marital privilege unavailable to Mrs. Miele, Judge Mansfield

ruled that the information sought was not confidential because it related solely to "ordinary business conversations with her husband," citing Parkhurst v. Berdell, 110 N.Y. 386, 393–394, 18 N.E. 123 (1888). We believe that the district court's holding was correct.

In *Parkhurst*, the plaintiff sued Berdell for misappropriation of securities which plaintiff had loaned him. At trial, Berdell's wife was required to testify

as to conversations with him when they were alone as to plaintiff's securities taken by him, his obligations to [plaintiff] for the same, and his promise to secure [plaintiff] therefor.

110 N.Y. at 393, 18 N.E. at 126. The Court of Appeals affirmed, holding that Berdell had waived the privilege by failing to make timely objection to the questions put to his wife. Alternatively, the court held that the conversations between Berdell and his wife were not privileged because they were not confidential:

They were ordinary conversations relating to matters of business which there is no reason to suppose he would have been unwilling to hold in the presence of any person.

Id. at 394, 18 N.E. at 127. Although the Court of Appeals has apparently never elaborated upon this statement, it has cited this aspect of *Parkhurst* with approval in dictum as the "ordinary business matters" exception to the marital privilege.[7] E. g., People v. Melski, 10

---

To the best of your knowledge does your husband maintain any banking, savings or checking accounts, either in the United States or abroad?

If so, where is each located, and state whether you have signatory powers over each.

If you maintain any separate accounts, where are they located?

To the best of your knowledge, list all of your husband's property of any nature whatsoever.

Mrs. Miele did reveal, however, that neither she nor her husband maintained safe deposit

boxes and that she believed that her husband had a G.I. insurance policy.

5. The order also remained unchanged as to Infinco, but that is not attacked on this appeal.

6. All parties agree that the question whether the marital privilege applies here is governed by New York law. See Massachusetts Mutual Life Ins. Co. v. Brei, 311 F.2d 463, 465–466 (2d Cir. 1962).

7. Merlin v. Aetna Life Ins. Co., 180 F.Supp. 90, 91–92 (S.D.N.Y.1960) (dictum), describes the *Parkhurst* exception as applica-

N.Y.2d 78, 80, 217 N.Y.S.2d 65, 176 N. E.2d 81 (1961). And, on the infrequent occasions when they have been called upon to decide the question, the lower state courts have evinced a general disinclination to apply the privilege to business and financial communications.[8] Under the New York decisions, then, the inquiries here into such matters as the existence and location of Mr. Miele's bank accounts and his ownership and transfer of property would not seem to invade the marital privilege.

The only factor indicating that these decisions are not controlling is the possibility, strongly suggested by the record, that Mr. Miele was attempting to conceal his assets or transfer them to his wife to thwart execution of plaintiff's judgment. See end of Part I supra. If that were so, and this were a criminal case, Mr. Miele's communication of these efforts to his wife, by word or deed, might be confidential and privileged under New York law. People v. Daghita, 299 N.Y. 194, 86 N.E.2d 172 (1949) (error to permit wife to testify against husband that she observed him store stolen merchandise in their home) ; People v. Monahan, 21 App.Div.2d 76, 249 N.Y. S.2d 562 (1964) (per curiam) (same— stolen payroll checks). Although our research discloses no New York decisions directly on point, we do not believe that the New York courts would apply the rule of these criminal cases, where the natural repugnance to depriving a man of his liberty because of the compelled testimony of his spouse gives the privilege its greatest force, to civil proceedings in aid of execution of judgment. To so extend the privilege might well enable an unscrupulous judgment debtor, perhaps with the active connivance of his wife, effectively to prevent execution.[9] This would work a miscarriage of justice, especially where, as here, the basis for the underlying judgment is the husband's fraud and the husband himself is protected from examination by his privilege against self-incrimination. "No considerations of domestic peace or of conjugal loyalty, no considerations of the sanctity of the marital relation" would seem to require such a result. Poppe v. Poppe, 3 N.Y.2d 312, 317, 165 N.Y.S.2d 99, 103, 144 N.E. 2d 72, 75 (1957). To the extent that the Mieles have attempted to conceal their assets from plaintiff, therefore, we think New York would follow the lead of other jurisdictions which have held that the marital privilege is not available to refuse disclosure of communications designed to perpetrate frauds on third parties. See, e. g., Kine v. Forman, 205 Pa.Super. 305, 209 A.2d 1 (Pa. Super.Ct.1965) ; [10] Fraser v. United

ble to "business communications between husband and wife where they are jointly engaged in business." However, our reading of *Parkhurst* and the New York cases interpreting it, see note 8 infra, persuades us that the exception applies more broadly.

8. See Johnson v. Johnson, 25 A.D.2d 672, 268 N.Y.S.2d 403, 406 (1966) (per curiam) (testimony of husband concerning wife's visits to physician and execution of insurance claim forms by physician not privileged) ; Norris v. Lee, 136 A.D. 685, 121 N.Y.S. 512 (App.Div.2d Dep't 1910) (statement by husband in letter to wife that he would pay off note to mother-in-law as soon as he *obtained* the necessary funds not privileged) ; Grossman v. Lindemann, 67 Misc. 437, 123 N.Y.S. 108 (Sup.Ct.App.Term 1910) (testimony of wife concerning husband's gift to her of interest on promissory note not privileged). Similarly, we have held in a federal criminal case, interpreting the common law "in the

light of reason and experience," Fed.R. Crim.P. 26, that facts "of a financial nature, referring to the income and assets of the marriage" are not privileged. United States v. Mackiewicz, 401 F.2d 219, 225 (2d Cir.), cert. denied, 393 U.S. 923 (1968).

9. The federal Bankruptcy Act permits the spouse of a bankrupt to be examined concerning his "acts, conduct, or property . . . any law of the United States or of any State to the contrary notwithstanding." 11 U.S.C. § 44(a). Collier on Bankruptcy ¶ 21.09 at 293 praises this right of examination as

a valuable one, for in many cases the spouse of the bankrupt is the only witness, the bankrupt being protected by privilege against incriminating testimony, who can shed any light on transactions or the whereabouts of secreted assets.

10. We believe the New York courts would find the recent decision in *Kine* particularly

States, 145 F.2d 139, 143–144 (6th Cir. 1944), cert. denied, 324 U.S. 849, 65 S. Ct. 684, 89 L.Ed. 1409 (1945); Tobias v. Adams, 201 Cal. 327, 258 P. 588, 592 (1927); Eddy v. Bosley, 34 Tex.Civ. App. 116, 78 S.W. 565, 568 (Tex.Ct.Civ. App.1903). But see Stalcup v. Jepsen, 118 Neb. 240, 224 N.W. 16 (Sup.Ct.Neb. 1929). Our conclusion is fortified by the line of New York cases which recognize that fraud is "easily practised and concealed under cover of the marriage relation" and consequently scrutinize business transactions between husband and wife with the utmost care where the rights of creditors are involved. White v. Benjamin, 150 N.Y. 258, 265, 44 N.E. 956 (1896); Herter v. Krzewinski, 233 A.D. 240, 251 N.Y.S. 331 (1931).[11]

We realize that divining what the New York courts would do with the problem before us is a little like reading tea leaves. But as we recently noted, in the absence of a certification statute, we have no choice but to make an educated guess. See Chance v. Board of Educ., 496 F.2d 820 (2d Cir. April 12, 1974). Accordingly, we hold that Judge Mansfield correctly ruled that the marital privilege did not apply under New York law. The questions posed to Mrs. Miele dealt with business matters that either were not confidential or, if deliberate efforts were made to conceal them to prevent execution of judgment, were not privileged even if the parties intended them to be confidential. As for the portion of the order which assessed $1,500 in attorneys' fees, while we might not

have imposed such a large amount ourselves, this was not an abuse of discretion.

Judgment affirmed.[12]

persuasive. *Kine* involved a proceeding to compel a judgment debtor-husband to answer questions posed to him by a judgment creditor on a deposition in aid of execution of judgment. The creditor alleged a systematic arrangement of the husband's affairs to place his property in the hands of his wife and beyond the reach of execution; the deposition questions were designed to reveal this chicanery. The husband raised the marital communications privilege to justify his refusal to answer but the court rejected this defense and directed him to testify. The court ruled that the public policy which protects as confidential the private communications between husband and wife does not extend to those communications which are in

furtherance of a fraud, at least in a civil action. 209 A.2d at 3.

11. Indeed, New York's strict scrutiny of such transactions undoubtedly often has the practical effect of forcing husband and wife to testify in actions to set conveyances aside as fraudulent, thereby waiving whatever privilege might be available, lest they lose on the merits. Cf. In re Levitan's Estate, 36 N.Y. S.2d 503 (Surr.Ct.Westchester Co.1942); B. W. G. Cooperative Corp. v. Collison, 24 N.Y.S.2d 651 (Sup.Ct.Erie Co.1941).

12. We award costs to plaintiff as the successful party on this appeal in accordance with our usual practice but deny its motion for attorneys' fees.