## Winck v. Daley Mack Sales Inc.

*Thomas G. Saylor* and *John J. Dirienzo*, for plaintiff.

*Robert G. Rose* and *Frank A. Orban*, for defendants.

COFFROTH, *P.J.*, August 4, 1980—This case is here on defendants' motion to compel discovery whose relevant request is for production of plaintiff's Federal and state income tax returns for the years 1972 through 1978 claimed by defendants to be "relevant and material and a proper item of discovery" on plaintiff's claim "for down time or loss of income and profits" alleged to have resulted from the negligence or recklessness of defendants in making repairs to plaintiff's truck in 1975 and 1976, and in the alternative for breach of implied warranty.

Plaintiff objects to producing the requested tax returns on the ground of irrelevance, citing Kaylor v. Baran, 5 D. & C. 567 (1956) and also on the ground that plaintiff's tax returns are joint returns of himself and his wife who has no interest in the case.

Kaylor v. Baran, supra, was a trespass action in which plaintiff sought damages for loss of use of his truck during down time for repairs; defendant's interrogatories sought plaintiff's 1954 Federal income tax return. In sustaining plaintiff's objection to revealing his gross income and tax return for the period in question, the court said at 568:

"It is the opinion of the court that the information here requested can have no possible relevance to the subject matter on the action. Such income figures may be, of course, completely relevant in a personal injury case where one is claiming loss of earnings or reduction of earning power, but here the gross income and net earnings may depend on matters entirely unrelated to this issue and at this time we decline to direct plaintiff to answer."

Apparently the court in Kaylor does not view the case as involving a claim for loss of earnings or

reduction of earning power as would be made in a personal injury claim; we are unable to tell from the brief and summary opinion in Kaylor precisely what damages plaintiff was claiming for "loss of use of his motor truck during the time necessary to effect repairs", at p. 567, and we can only assume from the language of the opinion above quoted that the damage claim was not based on lost earnings or profits.

In the instant case, plaintiff clearly claims loss of earnings and profits resulting from the loss of use, measured by the earnings of a similar truck doing similar work for the same employer during the same period of time, which is a proper measure of damages in such a case: Nelson v. Johnson, 55 D. & C. 2d 21, 25 Somerset 57 (1970). We thus distinguish this case from Kaylor; if the record should show that Kaylor made a claim for loss of profits or earnings, then we are forced into disagreement with the Kaylor court on the relevance for discovery purposes of the information sought, and we see no distinction between a personal injury case and a property damage case as respects discovery rights, once it is established that loss of earnings or profits is an issue in both: See Kine v. Forman, 205 Pa. Superior Ct. 305, 209 A. 2d 1 (1965), discovery of tax returns in aid of execution.

Relevance for discovery purposes is not restricted to admissibility at trial. Even under the old discovery rules before amendment in 1978, relevance to subject matter embraced but was not limited to relevance or potential relevance on a triable issue in the case, but included material which, though not itself having such relevance, might possibly lead to other information having trial relevance as well as any material which might reasonably be said to be a substantial aid in preparation for trial or

in the trial itself: Upstill v. Jamesway, 31 Somerset 211 (1975); Pa.R.C.P. 4001(c). That principle is even more clearly embraced in the amended discovery rules which in general liberalized discovery in Pennsylvania. Amended Pa.R.C.P. 4003.1 now expressly states (in part): "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." As pointed out in Upstill, supra, 217: "Preparation for trial necessarily covers much ground not touched in the trial itself. A great deal of data may be helpful to counsel in *preparation* for trial, in guiding the direction of his presentation and revealing pitfalls to be avoided, yet be otherwise useless at trial."

In the instant case, it is highly likely that having plaintiff's income tax returns for the year in which the loss occurred, and for prior and subsequent years for comparison purposes, will aid defense counsel in preparing for trial in the examination and cross-examination of witnesses at the trial on the issue of plaintiff's claimed loss of earnings or profits, even though the returns themselves may not be admissible as evidence: Gagliardi v. Tozzi, 44 D. & C. 2d 492 (1968); 10 Goodrich-Amram 2d §4003.1:9. Such aid can be expected to relate either to the substance of plaintiff's claim, or to plaintiff's credibility in connection therewith, or perhaps both. If plaintiff is to be allowed to make the claim for loss of earnings or profits, defendants must be allowed access to all of plaintiff's records on that subject, including income tax returns. See 10 Goodrich-Amram 2d §4009(a): 4. Tax returns are not privileged in such cases: Kine v. Forman, supra; Com. ex rel Swank v. Swank, 33 Somerset 209, 214 (1976).

The foregoing principles are basically principles of fair play. Thus, they prevent a litigant from insulating his tax records from discovery merely because they may also be the record for some other taxpayer: Com. ex rel Swank v. Swank, supra, 214, partnership and corporation returns; Fanasy v. Howard, 20 D. & C. 2d 234 (1959), corporation returns. Accordingly, the fact that plaintiff's income tax returns were jointly filed by him and his wife and may include irrelevant and confidential material to which defendants would not otherwise be entitled to access will not prevent discovery of the returns: 10 Goodrich-Amram 2d §4009(a): 4. Of course, if the irrelevant material can be redacted, that is a possible solution. Plaintiff may if he wishes present the tax returns initially in camera for a judicial determination of the extent of their discoverability: Com. ex rel Swank v. Swank, supra.

From the foregoing it follows that discovery procedures must allow a certain amount of "fishing" to see if there is any helpful data in records. This is especially true of records which on their face or by their nature are required or expected to contain relevant information upon an issue, such as tax returns and business records. Therefore, allowing discovery which takes the risk of disclosing irrelevant and otherwise privileged material is essential to the discovery process in such cases. Therefore, the court's statement in Kaylor supra, at p. 568, "the gross income and net earnings [in tax returns] may depend on matters entirely unrelated to this issue . . . may be a truism, but the answer is that the income and earnings *may be* related to the issue, and likely are, and finding out whether or not they are related is an important object of discovery. The foregoing is consistent with the principle, generally recognized, that in case of doubt discovery

should be liberally permitted. See: Upstill v. Jamesway, supra, at p. 215; 10 Goodrich-Amram 2d §§4001:3 and 4001:7. The burden is upon the party objecting to discovery to establish non-discoverablity, rather than upon the proponent of discovery to establish discoverability. See: 10 Goodrich-Amram 2d §§4001:3 and 4403.1:12 at note 43 citing Foltz v. Kauper, 35 Somerset 161 (1978).

## ORDER

And now, August 4, 1980, plaintiff is directed to furnish to counsel for defendants a copy of his Federal and Pennsylvania income tax returns for the years 1972 through 1978, within ten days, otherwise sanction will be imposed upon motion.