## Horwath v. Brownmiller

34

C.P. of Monroe County, no. 7724 Civil 1999.

*Michael D. Collins,* for plaintiff.
*Michael A. Gaul,* for defendant.

CHESLOCK, *J.,* February 15, 2001—On October 20, 1999, Richard J. Horwath[1] and Kathryn Horwath, husband and wife, commenced this action by filing a complaint against Carlisle Brownmiller and Marian Brownmiller, husband and wife. In response, defendants filed preliminary objections to plaintiffs' complaint on December 6, 1999, which this court disposed of by opinion and order dated March 3, 2000. Pursuant to an order of this court the plaintiffs filed an amended complaint on March 23, 2000. On April 12, 2000, the defendants filed an answer, new matter and counterclaim in response to plaintiffs' amended complaint. Subsequently, on May 18, 2000, the plaintiffs filed a reply to the defendants' new matter and counterclaim and asserting an additional new matter on their own behalf, to which the defendants filed a reply on May 30, 2000. Currently before this court is defendants' second motion to compel discovery.[2] Both parties filed briefs illustrating their respective position and this court heard oral arguments on this issue on January 2, 2001. We are now ready to rule upon defendants' motion.

---

1. On October 26, 1999, Richard J. Horwath (a/k/a Rick J. Horwath) suddenly passed away. On March 23, 2000, pursuant to court order, the plaintiffs filed an amended complaint to eliminate Richard J. Horwath as a party and to include the estate of Richard J. Horwath and Kathryn Horwath as administratrix of her husband's estate in his place.

2. Defendants filed their first motion to compel discovery on August 7, 2000. Defendants withdrew their first motion to compel discovery when the plaintiffs withdrew their claim for lost profits stemming from the underlying commercial lease dispute between these parties.

The following facts are relevant to the disposition of defendants' motion. On November 1, 1998, plaintiffs entered into a two-year, written commercial lease agreement with the defendants. The lease contains a provision limiting the use of the premises to the "restoration, repair and sale of used cars" only. (See commercial lease ¶2.) The defendants also operated a business on the premises, namely, the sale of consigned children's clothing. Prior to entering into the lease, plaintiffs had owned and operated a used automobile dealership in Stroud Township.

After taking possession of the premises, plaintiffs made various improvements necessary for the transfer of their used automobile dealership license and for the premises to conform to the Pennsylvania Department of Labor and Industry standards. In addition, plaintiffs moved their automobile repair equipment from their Stroud Township dealership to the leased premises.

In November 1998, a Chestnut Hill Township zoning officer issued a notice of violation to the defendants. According to a zoning ordinance, the premises had insufficient acreage on which to operate more than one business. The defendants appealed said notice to the Chestnut Hill Township Board of Zoning Appeals. After a hearing, the zoning hearing board concluded that plaintiffs could not use the premises for the "restoration, repair and sale of used cars." (See *In re Application for Zoning Permit Appeal of Marian and Carlisle Brownmiller* opinion, p. 11.) Subsequently, this suit followed.

In filing the current motion to compel discovery, the defendants are seeking a more specific answer to interrogatory no. 13 served upon plaintiffs on April 19, 2000, and copies of the plaintiffs' federal, state and local tax returns for several recent years along with other accounting documentation.[3] For the sake of judicial economy, defendants narrowed their request for copies of the plaintiffs' federal, state and local tax returns to two years, 1998 and 1999. Defendants assert that this information is relevant because it is necessary to de-

---

3. The defendants assert that the answer to the interrogatory was deficient and not in conformance with the Pennsylvania Rules of Civil Procedure relating to discovery. Specifically, defendants requested, per interrogatory no. 13, the plaintiffs to "[i]dentify all fact witnesses you intend to call at trial by name, *address and telephone number and set forth the substance of their testimony.*" (See defs.' br. in supp. of mot. to compel disc. at p. 3.) The plaintiffs responded by providing the defendants with a list of potential witnesses, namely, Kathryn Horwath, Carlisle Brownmiller, Marian Brownmiller, Arnold Wallin, Robert Beers, Patricia Ferrara, Kevin Harrison, Connie Merwine, Emmanual DeStefano and David Graver. (See *id.*) The plaintiffs provided no other contact information for these individuals or any information as to their proposed testimony.

Defendants' request for production of documents served on April 19, 2000, together with defendants' interrogatories asks plaintiffs to provide defendants with copies of the following:

"(8) Plaintiffs' federal, state and local tax returns for the years 1996, 1997, 1998 and 1999.

"(9) Plaintiffs' general ledger, financial statements, balance sheets, cash flow statements and any other accounting records for the years 1996, 1997, 1998 and 1999." (See defs.' br. in supp. of mot. to compel disc. at p. 4.)

In response to defendants' request for these documents, plaintiffs provided none of their federal, state or local tax returns for the above-mentioned years or any other accounting documentation.

termine if the expenses concerning improvements to the leased premises applied to another income-producing enterprise. Defendants further assert that this information is necessary so that defendants may adequately prepare for trial.

Typically, the Rules of Civil Procedure pertaining to discovery permit discovery that is broad and liberal. Consequently, to determine whether defendants' discovery requests are allowed by the rules, we must first examine the applicable language set forth in the rules regarding discovery. Specifically, Rule 4003.1 states, in relevant part:

"[A] party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking a discovery or to the claim or defense of any other party . . . ." Pa.R.C.P. 4003.1.

Additionally, Rule 4003.3 provides, in pertinent part:

"[A] party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including by his or her attorney, consultant, surety, indemnitor, insurer or agent." Pa.R.C.P. 4003.3.

Rule 4003.3 further states, by way of a limitation, that:

"The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to

the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics." Pa.R.C.P. 4000.3

Finally, Rule 4011 sets forth the following restrictions and limitations on discovery contained in the rules.

"No discovery or deposition shall be permitted which

"(a) is sought in bad faith;

"(b) would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party;

"(c) is beyond the scope of discovery as set forth in Rules 4003.1 through 4003.6; or

"(e) would require the making of an unreasonable investigation by the deponent or any party or witness." Pa.R.C.P. 4011.

Thus, as the above language indicates, discovery under the rules is generously allowed, limitations and restrictions upon discovery are narrowly construed. See *e.g., Schwab v. Milks*, 8 D.&C.4th 557, 558 (C.P. Lackawanna Cty. 1990).

In relying on the above-quoted language, we find that the information requested in interrogatory no. 13 is reasonable and within the range of permissible discovery. With interrogatory no. 13, defendants seek the names and contact information for plaintiffs' potential witnesses so that the defendants may adequately prepare for trial. Additionally, defendants request brief synopses of the expected testimony of these proposed witnesses. In considering defendants' request, we find noth-

ing in the rules which states that the information sought is outside the scope of allowable discovery or is privileged in some manner. Accordingly, we direct plaintiffs to provide a more specific answer to interrogatory no. 13 to the extent that they have not done so.[4]

We now turn to the more difficult question of whether the plaintiffs should be required to provide the defendants with copies of their 1998 and 1999 federal, state and local tax returns. To begin, we note that there is a decisive split among the relevant authorities that have previously considered this question. For the reasons stated herein, we conclude that an individual's tax return information is properly discoverable in certain situations despite conflicting opinions concerning disclosure of an individual's tax returns.

Plaintiffs assert that defendants are not entitled to copies of their federal, state and local 1998 and 1999 tax returns because these documents carry a qualified privilege.[5] We, however, disagree. "It has been held that

---

4. While we direct plaintiffs to provide the defendants with a brief encapsulation of the expected testimony of the proposed witnesses, plaintiffs are not required to provide defendants with a detailed or extensive summary of the proposed testimony. Rather, a brief sentence or two such that the defendants will not be unfairly surprised or prejudiced at trial should suffice.

In reviewing the defendants' motion, we note that the plaintiffs provided the defendants with additional information pertaining to their proposed witnesses, particularly, David Graver. Thus plaintiffs are required to provide any additional information only to the extent that the information subsequently provided to the defendants following the filing of this motion does not render this issue moot.

5. In support of the proposition that a person's federal, state and/or local tax returns carry a qualified privilege, plaintiffs rely on the deci-

federal income tax returns are not privileged, and that the courts have the power to compel the production of copies thereof where the information contained in the returns is relevant to the issues involved." See *e.g., Kine*

---

sion in *Webb v. Standard Oil Company of California* issued by the California Supreme Court en banc. See *Webb v. Standard Oil Co. of California*, 319 P.2d 621 (Cal. 1957). In *Webb,* the California Supreme Court ruled that an individual's tax returns carried a statutory privilege and, therefore, was not discoverable. *Id.* at 623-24. The *Webb* court reached this conclusion by relying on California statutes that stated that a person's tax returns could only be disclosed in certain, narrow circumstances. *Id.* The court in *Webb* concluded that to hold otherwise would nullify the effect of the applicable state statutes. *Id.* Thus, the California Supreme Court did not compel plaintiffs in *Webb* to produce copies of their federal or state tax returns. *Id.*

Plaintiffs also rely on *Schnabel v. The Superior Court of Orange County.* See *Schnabel v. The Superior Court of Orange County,* 854 P.2d 1117 (Cal. 1993). Relying on the decision in *Webb,* the *Schnabel* court concluded that this type of financial information carried a qualified privilege in that California enacted several state statutes relating to the filing of tax returns carried secrecy provisions. *Id.* at 1126-27. Accordingly, the California Supreme Court concluded that the wife was entitled to discovery concerning the husband's personal tax returns because of the nature of the underlying dispute as to alimony. *Id.* at 1128-29. Additionally, the *Schnabel* court permitted disclosure of certain corporate records and tax returns pertaining solely to the husband. *Schnabel,* 854 P.2d at 1128-29. The court in *Schnabel* however, drawing support from the *Webb* decision refused to allow disclosure of any corporate tax returns that could contain information regarding third parties not involved in the underlying alimony action because such financial information was subject to a judicially created privilege. *Id.* at 1126-27.

In the instant matter, however, we find the plaintiffs' reliance on the *Webb* and *Schnabel* decisions to be misplaced. As stated above, we find the cases, which conclude that a person's tax returns are discoverable in certain, narrow situations to be more persuasive. When the party seeking disclosure of an individual's tax returns through discov-

*v. Forman*, 205 Pa. Super. 305, 312, 209 A.2d 1, 4 (1965). Accordingly, we conclude that the better reasoned cases are those which hold that copies of a person's tax return information are not privileged, particularly where the taxpayer's income and/or business expenses pertain to the underlying suit.[6]

Information concerning damages is as discoverable as information pertaining to liability. See *e.g., The Hyman Cos. Inc. v. Brozost*, no. 97-269, 1997 U.S. Dist.

---

ery can effectively demonstrate that such information is relevant and unavailable through alternative sources, then that party is entitled to obtain copies of those tax returns from the opposing party. Thus, we cannot conclude that an individual's federal, state or local income tax returns carry either a qualified or absolute privilege, judicially created or otherwise.

6. See *e.g., In re Greco Appeal*, 30 D.&C.3d 661, 662 (C.P. Beaver Cty. 1984) (holding that federal tax returns are not privileged); *Davis v. Buckham*, 68 D.&C.2d 734, 737-38 (C.P. Bucks Cty. 1975) (concluding that if copies of a person's tax returns were meant to be privileged then Congress would have chosen to enact an appropriate statute); *Haverford Hall Inc. v. Hamilton Arms Inc.*, 34 D.&C.2d 22 (C.P. Delaware Cty. 1962) (permitting disclosure of the requested tax returns); and *Noonan v. McGuire*, 11 D.&C.2d 543, 547 (C.P. Allegheny Cty. 1953) (stating that "copies of tax returns have been held not to be privileged"). See also, *PaineWebber Inc. v. Devin*, 442 Pa. Super. 40, 658 A.2d 409 (1995) (here, the trial court permitted disclosure of corporate and personal tax returns because the party opposing such discovery failed to establish that such discovery would be oppressive, burdensome or harassing). But see, *Sprague v. Philadelphia Newspapers Inc.*, 27 Phila. 333, 433 (Phila. Cty. 1993) (concluding that income tax returns are privileged); *Schnabel v. The Superior Court of Orange County*, 854 P.2d 1117 (Cal. 1993) (concluding that a judicially created privilege applied to income tax retuns); and *Webb v. Standard Oil Company of California*, 319 P.2d 621 (Cal. 1957) (court found that income tax returns were privileged because to do otherwise would nullify California state statutes.)

Lexis 12129 at *3 (E.D. Pa. 1997). Generally, broad and liberal discovery is encouraged but this policy favoring generous discovery must be balanced against other public policies, which favor the nondisclosure of tax returns as confidential communications between the taxpayer and the government. *Id.* To balance these interests, we must apply a two-part test.

"First, the party seeking discovery must demonstrate relevance.[7] Second, if relevant, the returns will be discoverable unless the party resisting discovery meets its burden of proving that there is no compelling need for the returns because an alternative source for the information exists." See *id.* (citing *Fort Wash. Resources Inc. v. Tannen,* 153 F.R.D. 78, 80 (E.D. Pa. 1994)).

Applying this two-part test to the instant matter, we conclude that the defendants have established the relevance of the plaintiffs' 1998 and 1999 federal, state and local tax returns to the underlying dispute. Defendants assert that this information is necessary to determine if plaintiffs' business expenses and improvement costs actually pertained to the leased premises or another income generating, enterprise. Thus, we conclude that the plaintiffs' income tax return information is relevant as it pertains to business expenses and/or deductions involving the leased premises and, therefore, we conclude that the defendants have satisfied the first element of this test.

---

7. With respect to this first requirement, relevancy should be broadly and liberally interpreted and if there is any conceivable basis for relevancy, then the discovery should be permitted. *In re Greco Appeal,* 30 D.&C.3d 661, 662-63 (C.P. Beaver Cty. 1981).

We now consider the second element. To obtain discovery of an individual's income tax return information, the defendants must show a compelling need for such documentation because the information is not available elsewhere. Upon review and thorough consideration of the record before us, we believe that the defendants have demonstrated that there is no adequate, alternative source for the information they seek. The plaintiffs have produced numerous receipts, and, admittedly, these receipts reflect the plaintiffs' expenses for a building and/or renovation project. However, these receipts are also generic and uninformative to the extent that these receipts do not indicate the items purchased or for what or where the plaintiffs used these items. Moreover, we note that these receipts provide little information other than providing a basis to calculate the total amount spent by plaintiffs in installing these improvements. However, very little other information may be gleaned from examining these receipts. Thus, we conclude that the defendants demonstrated a compelling need for the plaintiffs' federal, state and local tax return information for 1998 and 1999, even with plaintiffs' withdrawal of their claim for lost profits. Therefore, plaintiffs must turn over copies of their federal, state and local tax returns, accompanying schedules and worksheets for 1998 and 1999.

Despite our conclusion that plaintiffs should produce copies of their income tax returns for defendants' inspection, we note that there are serious privacy interests implicated by the disclosure of this type of financial data. See *e.g., The Hyman Cos. Inc.*, 1997 U.S. Dist.

Lexis 12129 at *4 (citing *DeMasi v. Weiss*, 669 F.2d 114, 120 (3d Cir. 1982)). Therefore, we shall conduct an in camera review of such information and turn only those portions which are inherently pertinent to the underlying dispute regarding the alleged breach of a commercial lease. See *e.g., Davis v. Buckhan,* 68 D.&C.2d 734, 740 (C.P. Bucks Cty. 1975) (stating that income tax returns are not privileged but such information should be produced in camera for the trial court judge to determine what information, if any, is relevant to the within action and make only such latter information available to the moving party). Accordingly, plaintiffs should turn over their federal, state and local tax returns for 1998 and 1999 to the court so that we may conduct a preliminary in camera inspection of plaintiffs' income tax returns. Upon determining which information set forth in plaintiffs' income tax returns is relevant to the within action, we shall turn this information over to the defendants.

In light of the foregoing discussion, we enter the following order:

## ORDER

And now, February 15, 2001, the defendants, Carlisle Brownmiller and Marian Brownmiller's motion to compel discovery is hereby granted. Accordingly, the plaintiffs, Kathryn Horwath and Kathryn Horwath as administratrix of the estate of Richard J. Horwath a/k/a Rick J. Horwath must produce copies of their federal tax returns with accompanying schedules and worksheets for 1998 and 1999 within 20 days of receiving notification

of this order. Further, these documents should be provided to this court for an in camera review in which this court will turn over the pertinent information to defendants and their counsel after blacking out any information unnecessary to the underlying dispute.