PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4065
No. 12-4500
_____

BEVERLY OHNTRUP, ADMINISTRATOR OF THE
ESTATE OF ROBERT OHNTRUP; ROBERT OHNTRUP

v.

MAKINA VE KIMYA ENDUSTRISI KURUMU;
THE REPUBLIC OF TURKEY;
FIREARMS CENTER INCORPORATED

*Alliant Techsystems, Inc,
                                Intervenor in No. 12-4065
*(Pursuant to the Court's Order dated 12/28/12)

Beverly Ohntrup, Administrator of the Estate of Robert
Ohntrup, Deceased, and Beverly Ohntrup, in her own right,
                                                Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-76-cv-00742)
District Judge:  Honorable Mitchell S. Goldberg
_____

Argued September 25, 2013
Before:  AMBRO, FISHER and
HARDIMAN, *Circuit Judges*.

(Filed: July 25, 2014)

William F. Ford, Esq. [Argued]
Rachel E. Stephens, Esq.
Lathrop & Gage
2345 Grand Boulevard
Suite 2200
Kansas City, MO 64108

Will W. Sachse, Esq.
Dechert
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104
        *Attorneys for Intervenor Alliant Techsystems, Inc.*

Casey B. Green, Esq. [Argued]
Wade D. Albert, Esq.
Sidkoff, Pincus & Green
1101 Market Street
Suite 2700
Philadelphia, PA 19107
        *Attorneys for Appellant Beverly Ohnthrup*

Thomas J. Sullivan, Jr., Esq. [Argued]
Viola Vetter, Esq.
Brady L. Green, Esq.

Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103
    *Attorneys for Appellee Morgan, Lewis & Bockius*

––––––––––

OPINION

––––––––––

HARDIMAN, *Circuit Judge*.

These two appeals arise from the failure of a Turkish arms manufacturer to pay a thirty-year-old judgment. The first appeal (No. 12-4500) requires us to review the District Court's order granting counsel's motion to withdraw. Perceiving no abuse of discretion, we will affirm that order. The second appeal (No. 12-4065) challenges the District Court's conclusion that certain post-judgment discovery requests impose an "undue burden." Because the District Court erred when it relied upon the uncertainty surrounding the judgment creditor's ability to attach the targeted property, we will vacate that order and remand.

I

The historical facts underlying this dispute are incidental to the issues now before us, so we recount them only briefly. In 1975, a pistol manufactured by the judgment debtor malfunctioned, firing a bullet through Robert Ohntrup's hand while he loaded the gun. Robert and his wife Beverly filed a products liability action in the District Court against the seller of the pistol, Firearms Center, Inc., and its owners. Defendants then impleaded the manufacturer of the

3

pistol, Makina ve Kimya Endustrisi Kurumu (MKEK), which is wholly owned by the Republic of Turkey. After a bench trial, the District Court entered a final judgment holding Firearms Center and MKEK jointly liable for $847,173.97 and obliging MKEK to indemnify Firearms Center. MKEK appealed and we affirmed. *See Appeal of Makina ve Kimya Endustrisi Kurumu* (*Ohntrup I*), 760 F.2d 259 (3d Cir. 1985).

The law firm of Morgan Lewis & Bockius (the Firm or Morgan Lewis) represented MKEK throughout the products liability litigation. MKEK terminated the Firm after learning that we dismissed its appeal in March 1985, and the Firm filed a motion to withdraw. Under the local rules of the United States District Court for the Eastern District of Pennsylvania, an attorney must receive permission from that court to withdraw unless his client appoints replacement counsel. *See* E.D. Pa. Local R. 5.1(c). It permitted the individual Morgan Lewis lawyers to withdraw but required the Firm to remain as counsel of record until MKEK hired substitute counsel.

The Firm appealed the partial denial of its motion to withdraw, but we affirmed. *Ohntrup v. Firearms Ctr., Inc.* (*Ohntrup II*), 802 F.2d 676 (3d Cir. 1986). In doing so, we noted that the Firm filed its motion only a few months after the Ohntrups initiated collection efforts, when it remained to be seen whether MKEK would ultimately comply with the District Court's discovery orders. At that time, we viewed the Firm as an important conduit for communication between the Ohntrups and MKEK, which had already earned its reputation as an "intract[a]ble litigant." *Id.* at 679. Without the Firm, we noted that the substantial communication gap between the Ohntrups and MKEK would hamper post-judgment proceedings. *Id.*

4

The Ohntrups tried in vain to collect their judgment, as MKEK disregarded the Ohntrups' discovery requests. The Ohntrups sought assistance from the United States Department of State and they pursued MKEK in the Turkish courts, both to no avail. They also tried to add the Republic of Turkey as a defendant under an alter ego theory, but Turkey and MKEK ignored the District Court's discovery orders in that regard.

In 2007, eight years after Robert died of cancer, Beverly, in her personal capacity and as administrator of Robert's estate (collectively, Ohntrup), obtained a $16 million civil contempt judgment against MKEK that grows by $10,000 annually until MKEK complies with discovery. Meanwhile, the original judgment continues to increase by ten percent each year to account for delay damages. Ohntrup's judgments against MKEK are now worth about $25 million.

Over twenty-five years have passed, and MKEK has yet to respond to a discovery request or participate in any way in post-judgment proceedings. Despite having been thwarted at seemingly every turn, Ohntrup's lawyers continue their dogged pursuit of MKEK. In 2011, they learned of a $16.2 million transaction in which a Minneapolis-based company called Alliant Techsystems, Inc. (Alliant), agreed to sell munitions manufacturing components to MKEK. Ohntrup obtained some initial discovery from Alliant, but the District Court entered an order denying Ohntrup's subsequent discovery requests. When Ohntrup recently renewed her post-judgment discovery efforts, Morgan Lewis again sought leave to withdraw as counsel for MKEK. This time, the District Court granted the motion to withdraw. Ohntrup appeals both orders.

## II

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction over both appeals pursuant to 28 U.S.C. § 1291. In Morgan Lewis's previous appeal of this dispute, we applied the doctrine of "practical finality" to exercise jurisdiction over its appeal of the District Court's order denying its motion to withdraw from representing MKEK. *Ohntrup II*, 802 F.2d at 678. For the reasons stated in that opinion, we have jurisdiction over Ohntrup's present appeal of the District Court's order granting the Firm's withdrawal from representing MKEK (No. 12-4500).

As for Ohntrup's appeal of the District Court's order denying post-judgment discovery in aid of execution (No. 12-4065), the same rationale again leads us to conclude that we have jurisdiction. The District Court's order in that appeal prevents Ohntrup from learning more about the munitions manufacturing components she claims belong to MKEK. Without that information, Ohntrup is unable to attach the property. The District Court's order ends Ohntrup's pursuit of that property, and to deny jurisdiction would render the District Court's order effectively unreviewable. This would be inappropriate for the same reasons found by some of our sister courts, which have applied the doctrine of practical finality to exercise jurisdiction over orders denying post-judgment discovery. *See Wilkinson v. F.B.I.*, 922 F.2d 555, 558 (9th Cir. 1991), *overruled on other grounds by Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *United States v. McWhirter*, 376 F.2d 102, 104–06 (5th Cir. 1967); *see also Saldana-Sanchez v. Lopez-Gerena*, 256 F.3d 1, 7 n.12 (1st Cir. 2001) (endorsing this proposition). We join those courts in holding that a judgment creditor may appeal

6

from the denial of discovery in aid of execution. Accordingly, we have jurisdiction to hear both appeals.

## III

Having established our jurisdiction, we turn to Ohntrup's appeal of the District Court's order granting Morgan Lewis's motion to withdraw. After Ohntrup recently restarted efforts to collect on the judgment, the Firm renewed the request the District Court denied over twenty-five years ago and asked for permission to withdraw as counsel for MKEK. Finding that continued representation would serve no meaningful purpose, the District Court entered an order granting the motion. We review that decision for abuse of discretion. *Ohntrup II*, 802 F.2d at 679.

Our decision in *Ohntrup II* and this appeal both implicate the relevant local rule for attorney withdrawal, which provides: "An attorney's appearance may not be withdrawn except by leave of court, unless another attorney of this court shall at the same time enter an appearance for the same party." E.D. Pa. Local R. Civ. P. 5.1(c).[1] Although we affirmed the District Court's order in *Ohntrup II*, we took issue with the notion that Morgan Lewis could not withdraw until MKEK hired substitute counsel. We said in that regard:

> We do not believe that such a result automatically follows in all cases from the language of [Local Rule 5.1(c)]. Otherwise, a lawyer in the present situation might be unable to withdraw at any time. Such a result is neither

---

[1] Formerly E.D. Pa. Local R. Civ. P. 18(c).

7

mandated nor required for the effective administration of the judicial system. Rather, we conclude that a law firm is entitled to withdraw once the firm demonstrates to the satisfaction of the district court that its appearance serves no meaningful purpose, particularly insofar as an opposing interest is concerned.

*Id.* at 679–80.

A panel of our Court and district courts within the Third Circuit have interpreted the quoted passage in *Ohntrup II* as enunciating a "meaningful purpose" test that guides the district court's discretion on a motion for leave to withdraw. These courts have formulated three- and four-factor tests to decipher the import of "meaningful purpose."[2] We perceive two problems with that approach. First, there is no multi-factor test that a district court must apply to decide a motion for attorney withdrawal. Rules regarding attorney withdrawal are necessarily general because of the context-laden nature of such determinations. The interests to be considered will vary widely from case to case. Second, contrary to the District

---

[2] *See, e.g.*, *Buschmeier v. G&G Investments, Inc.*, 222 F. App'x 160 (3d Cir. 2007); *Best Med. Int'l, Inc. v. Accuray, Inc.*, No. 2:10-CV-1043, 2014 WL 281676 (W.D. Pa. Jan. 24, 2014); *Sharp v. Verizon Del., Inc.*, No. 11-1209, 2012 WL 6212615 (D. Del. Dec. 12, 2012); *S.E.C. v. Asthma Disease Mgmt., Inc.*, No. 02-7436, 2012 WL 1658410 (E.D. Pa. May 11, 2012); *Select Brokerage Servs., Inc. v. Asset Building Consultants, Ltd.*, No. 10-953, 2011 WL 283186 (W.D. Pa. Jan. 26, 2011); *Worldspan, L.P. v. Ultimate Living Grp., LLC*, No. 03-1081, 2006 WL 1046942 (D. Del. Apr. 20, 2006).

Court's interpretation, its discretion to grant a motion to withdraw does not begin with whether the attorney serves a meaningful purpose. Rather, we stated that when the law firm serves no meaningful purpose, it "is *entitled* to withdraw." *Ohntrup II*, 802 F.2d at 680 (emphasis added). That is, it would be an abuse of discretion to deny its motion to withdraw. "The very concept of discretion presupposes a zone of choice within which the trial courts may go either way." *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 971 (8th Cir. 1984). The point at which the law firm no longer serves a meaningful purpose in the case marks the outer boundary of the District Court's discretion because withdrawal would be required at that point. By requiring "leave of court" before an attorney may withdraw, the local rules commit the decision on attorney withdrawal to the discretion of the district court. And that discretion is not governed by any "meaningful purpose" test.

Here, the District Court granted the Firm's renewed motion for withdrawal and did not abuse its discretion in doing so. Ohntrup claims the District Court erred because, without the Firm as counsel to MKEK, she will suffer onerous service requirements under the Hague Convention, which governs service on foreign defendants in countries, like Turkey, that have ratified the treaty.[3] Ohntrup argues that

---

[3] This question turns on the interpretation of Article 10 of the Hague Convention, which governs service by mail. It is a question of first impression in our Court and one that divides the other courts of appeals. As an alternative to reversing the District Court's dismissal of Morgan Lewis, Ohntrup asks us to hold that she may serve papers by mail without running afoul of the Hague Convention. This

such a burden weighs far more heavily than the Firm's light burden of forwarding papers to Turkey. We disagree.

At the time the District Court denied the Firm's first motion to withdraw, it remained uncertain how the Ohntrups' post-judgment proceedings would unfold and whether MKEK would comply with discovery requests served on the Firm. We affirmed the District Court's initial denial of the motion to withdraw because there was a chance that the Firm's presence would facilitate communication between the parties, not to guarantee Ohntrup the most convenient method to comply with the service requirements in the Federal Rules of Civil Procedure. By now, it is clear that the Firm is merely a captive, uncompensated process server and that Ohntrup's efforts to communicate with MKEK through the Firm are futile. Accordingly, the District Court did not err when it granted the Firm's motion to withdraw.[4]

IV

---

hypothetical question is not ripe for review. *See Peachlum v. City of York, Pa.*, 333 F.3d 429, 433 (3d Cir. 2003).

[4] Ohntrup asserts that our decision in *Ohntrup II*, which affirmed the District Court's statement denying the Firm's motion to withdraw until MKEK obtains substitute counsel, is law of the case. The penultimate sentence in our opinion in *Ohntrup II* explicitly negates this argument: "Our affirmance is without prejudice to renewal of the motion at a later appropriate time even if no substitute counsel replaces Morgan." 802 F.2d at 680.

We next consider Ohntrup's appeal of the District Court's order denying additional discovery in aid of execution. We review the denial of discovery for an abuse of discretion. *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000).

Our review of this order begins with a summary of the relevant factual and procedural history. Two months after Alliant announced its contract with MKEK, Ohntrup filed a motion for supplementary relief in aid of execution pursuant to Fed. R. Civ. P. 69(a) and Pa. R. Civ. P. 3118. Ohntrup asked the District Court to enjoin Alliant from transferring any property in its possession owned by MKEK and to compel Alliant to disclose information regarding its transactions with MKEK. At the recommendation of the Magistrate Judge, the District Court denied Ohntrup's request for an injunction, but granted discovery, subject to a confidentiality order to protect Alliant's confidential business information.

Following the District Court's order, Alliant produced its current agreements with MKEK, along with information on MKEK's finances and Alliant's shipments to Turkey. Ohntrup's lawyers alleged deficiencies in Alliant's responses, but the Magistrate Judge disagreed, holding that Alliant was not required to supplement its responses with specifics on future shipments. Soon thereafter, Ohntrup served Alliant with three additional sets of discovery requests, mostly concerning the timing of the shipments. Alliant moved to quash those requests, and the Magistrate Judge issued an order reaffirming her decision that Alliant need not supplement its responses. Upon review of the Magistrate Judge's order, the District Court held that additional discovery would be an "undue burden" on Alliant under Pa.

11

R. Civ. P. 4011(b) because: (1) discovery may jeopardize Alliant's relationship with MKEK, (2) Alliant is an innocent third party, (3) it would incur expenses responding to discovery, and (4) discovery may be futile if the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1330 *et seq.*, protects the components from attachment.

The District Court's analysis improperly considered the possibility that discovery might be futile without determining whether that was in fact the case. Although the District Court is correct that "there is doubt as to whether Plaintiffs will likely be able to execute on their judgments," Ohntrup's *potential* inability to show that the subject property is not immune from attachment is immaterial to the question of unreasonable burden.[5] *See* App. at 14. Ohntrup should not be penalized in the pursuit of discovery in aid of execution merely because a novel or difficult question of law is implicated. Accordingly, we will remand so the District Court may analyze the question anew.

This does not mean that Alliant must wait until Ohntrup files a writ of execution if it wishes to argue that the FSIA bars attachment. Consistent with the Supreme Court's recent pronouncement regarding the FSIA, if MKEK's munitions manufacturing components are immune from attachment, then the District Court should deny Ohntrup's discovery request "because information that could not

---

[5] The District Court relied on the "unreasonable . . . burden" rule in Pa. R. Civ. P. 4011(b) for its ruling, but used the "undue burden" term of Fed. R. Civ. P. 45. As the District Court applied the Pennsylvania Rules of Civil Procedure, we will use the language of those rules.

possibly lead to executable assets is simply not 'relevant' to execution in the first place." *Republic of Argentina v. NML Capital, Ltd*., 134 S. Ct. 2250, 2257 (2014) (quoting Fed. R. Civ. P. 26(b)(1)). Thus, if Alliant can persuade the District Court that Ohntrup cannot attach the targeted property, then Ohntrup's discovery would be irrelevant under Rule 4011(c).[6] Conversely, if the District Court concludes that the targeted property is not immune, that fact would obviously weigh in Ohntrup's favor. Finally, if the District Court chooses not to decide whether the targeted property is subject to attachment or lacks sufficient information to reach a definitive conclusion on the issue before discovery, any speculation in that regard should not be a factor in the Court's unreasonable burden analysis. *See NML Capital*, 134 S. Ct. at 2257-58.

\* \* \*

For the reasons stated, we will affirm the District Court's order granting Morgan Lewis's motion to withdraw as counsel for MKEK. We will vacate the order of the District Court precluding discovery and remand the case for additional proceedings consistent with this opinion.

---

[6] As the party objecting to the discovery, Alliant would bear the burden of persuasion on the FSIA issue. *See Winck v. Daley Mack Sales Inc.*, 21 Pa. D. & C.3d 399, 404 (Pa. Com. Pl. 1980). We do not decide who bears the burden of persuasion when a party actually attempts to attach property that is arguably immune and the FSIA is directly at issue.